UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>-against-<br><br>RIVERS EDGE ENTERPRISES, LLC D/B/A RIVER'S EDGE BAR AND GRILL,<br><br>Defendant. | Civil Action No. _____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>**INJUNCTIVE RELIEF SOUGHT** |

## NATURE OF ACTION

This is an action under Title VII of the Civil Rights Act of 1964 to correct unlawful sex-based employment practices and to provide appropriate relief to Charging Party Krystal Argila ("Charging Party" or "Ms. Argila"), and other aggrieved female employees who were adversely affected by such practices from at least May 22, 2022, through the present and ongoing. As alleged with greater particularity below, Defendant Rivers Edge Enterprises, LLC d/b/a River's Edge Bar and Grill ("Defendant" or "River's Edge") violated Title VII of the Civil Rights Act of 1964 by subjecting Ms. Argila and a class of female employees to a sexually hostile work environment based on their sex, and by

1

retaliating against Ms. Argila for complaining about the hostile work environment.

## JURISDICTION AND VENUE

1. Jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) ("Title VII").

2. Venue is proper because a substantial part of the events giving rise to Title VII violations occurred at Defendant's Gibsonton, Florida business location which is within the jurisdiction of the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. §1391(b).

## PARTIES

3. Plaintiff Equal Employment Opportunity Commission is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, River's Edge has continuously been doing business in the State of Florida and has continuously had at least 15 employees.

5. At all relevant times, River's Edge has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h)

## CONDITIONS PRECEDENT

6. More than thirty days prior to the institution of this lawsuit, Charging Party Krystal Argila filed a charge of discrimination against River's Edge alleging, among other things, that River's Edge violated Title VII.

7. The Commission issued a Letter of Determination on April 18, 2021, finding reasonable cause to believe that River's Edge subjected Ms. Argila and a class of female employees to a sexually hostile work environment and that River's Edge retaliated against Ms. Argila for complaining about the hostile work environment.

8. Prior to initiating this lawsuit, the Commission attempted to correct the unlawful employment practices alleged herein through conciliation to remedy the discriminatory practices and provide appropriate relief. The Commission was unable to secure from River's Edge a conciliation agreement acceptable to the Commission.

9. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

### General Background

10. River's Edge is a restaurant owned and operated in Gibsonton, Florida by brothers Robert, Randall, and Ronald Cremeans (collectively, the "Cremeans brothers").

11. The Cremeans brothers work onsite at the restaurant as managers and oversee all aspects of restaurant operations.

### Charging Party Krystal Argila

12. River's Edge hired Krystal Argila as a server on or around March 12, 2022.

13. Ms. Argila worked as a server at River's Edge until her termination on or around July 24, 2022.

14. During Ms. Argila's employment, River's Edge did not have policies on workplace harassment, nor did it possess a complaint procedure for employees to report harassment.

15. During her employment at River's Edge, Ms. Argila had almost daily contact with co-owner and manager, Ronald Cremeans.

16. Ronald Cremeans sexually harassed Ms. Argila throughout her employment at River's Edge.

17. Ronald Cremeans made sexually charged comments to Ms. Argila throughout her employment with River's Edge at nearly every shift she worked. The comments included but were not limited to the following:

  i. Ronald Cremeans described sexual acts to and in Ms. Argila's presence;

  ii. Ronald Cremeans talked about pornography sites and scrolled through pornography sites on his phone for Ms. Argila to see the content;

  iii. Ronald Cremeans propositioned Ms. Argila for sexual favors in exchange for money on multiple occasions, including suggesting that she join him in the restaurant's outdoor shed to "make more money" and/or told her to rent a hotel room with him; and

  iv. Ronald Cremeans made comments to Ms. Argila about how he found her attractive on a regular basis;

18. Ronald Cremeans, who is physically imposing and much bigger than Ms. Argila, regularly hunched over Ms. Argila while she used the restaurant's point of sale computer and pressed his body into hers, rubbing against her.

19. On another occasion, Ronald Cremeans touched Ms. Argila's bare thigh.

20. Ronald Cremeans openly harassed Ms. Argila in the presence of his brothers and co-owners. His brothers and co-owners saw his sexually harassing conduct and did not take actions to stop it.

21. Ms. Argila complained to Ronald's brother and co-owner, Robert Cremeans, on multiple occasions about the sexual hostile work environment to which Ronald subject her and other female employees, but the sexual hostile work environment did not stop. In response, Robert Cremeans told Ms. Argila that "this is how Ron is" and chided her for being "sensitive."

22. During a telephone call on or around July 24, 2022, Ms. Argila complained to Robert Cremeans about Ronald Cremeans' sexually harassing behavior. She told Robert that she was "going to do something about it." After she said this, Robert Cremeans sounded more agitated and terminated her employment.

23. Robert Cremeans terminated Ms. Argila's employment because she complained to him about the sexually hostile work environment to which Ronald Cremeans subject her.

24. As a result of the sexual hostile work environment she endured and the retaliatory termination, Ms. Argila was harmed and suffered damages.

## Class of Female Employees

25. Since at least May 22, 2022, River's Edge subjected female employees to sexual harassment.

26. Ronald Cremeans, on a daily basis, touched and groped female employees, made sexual comments to female employees, and propositioned female employees to have sex with him.

27. Ronald Cremeans sexually harassing conduct was overt and pervasive to the point that female employees were either subject to it directly and/or witnessed other female employees being subjected to sexual comments and touching.

28. Female employees of River's Edge had daily contact with co-owner and manager, Ronald Cremeans.

29. Ronald Cremeans groped his female employees or otherwise touched them inappropriately nearly every day. For example, he slapped a female employee's buttocks, leaned over female employees when they used the cash register, and rubbed against them from behind.

30. Ronald Cremeans regularly asked his female employees to have sex with him in the restaurant shed onsite in exchange for money.

31. Ronald Cremeans regularly scrolled through pornography websites and played pornography videos in the presence of his female employees.

32. Ronald Cremeans regularly made comments of a sexual nature regarding his female employees' bodies in the presence of Ms. Argila and other female employees, noting which women he found attractive or unattractive, and making comments such as "look at that ass."

33. Ronald Cremeans regularly made comments of a sexual nature regarding female customers' bodies in the presence of Ms. Argila and other female employees. Ronald Cremeans even made comments like, "look at that ass," and point to customers who were teenagers and even younger.

34. Ronald Cremeans' brothers and co-owners, Robert and Randall Cremeans, observed and received complaints about Ronald Cremeans' conduct but the sexually harassing conduct did not stop.

35. Because of River's Edge unlawful conduct, a class of female employees were harmed and suffered damages.

## STATEMENT OF CLAIMS

### Count 1: Hostile Work Environment (Krystal Argila)

36. As set forth in Paragraphs 12 through 24, River's Edge engaged in unlawful employment practices, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by subjecting Ms. Argila to a sexually hostile work environment.

37. The effect of the practices complained of in Paragraphs 12 through 24 has been to affect the terms and conditions of employment for Ms. Argila at River's Edge and to deprive her of equal employment opportunities and to otherwise adversely affect her status as an employee because of her sex.

38. The unlawful employment practices complained of in Paragraphs 12 through 24 were intentionally done with malice and/or reckless indifference to Ms. Argila's federally protected rights.

### Count 2: Hostile Work Environment (Class Members)

39. As set forth in Paragraphs 25 through 35, since at least May 22, 2022, River's Edge subjected and continues to subject a class of female employees to a hostile work environment based on sex, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1).

40. The effect of the practices complained of in Paragraphs 25 through 35 has been to affect the terms and conditions of employment for a class of female employees and to deprive them of equal employment opportunities and to otherwise adversely affect their status as employees at River's Edge because of their sex.

41. The unlawful employment practices complained of in Paragraphs 25 through 35 were intentionally done with malice or with reckless indifference to the federally protected rights of the affected class of female employees.

### Count 3: Retaliation (Krystal Argila)

42. As set forth in Paragraphs 12 through 24, River's Edge engaged in unlawful employment practices, in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), when it terminated the employment of Ms. Argila in retaliation for engaging in protected activity.

43. The effect of the practices complained of in paragraphs 12 through 24 has been to affect the terms and conditions of employment for Ms. Argila at River's Edge and to deprive her of equal employment opportunities and to otherwise adversely affect her status as an employee because she engaged in protected activity.

44. The unlawful employment practices complained of in Paragraphs 12 through 24 were intentionally done with malice and/or reckless indifference to the federally protected rights of Ms. Argila.

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court:

45. Grant a permanent injunction enjoining River's Edge, its officers, agents, servants, managers, employees, and all persons in active concert or participation with them, from participating in discriminatory conduct based on sex including, but not limited to, subjecting employees to sexually hostile work environment and/or retaliating against employees who engage in statutorily protected activity in the workplace;

46. Order River's Edge to institute and carry out policies, practices, and programs which provide equal employment opportunities for female employees, and which eradicate the effects of its past and present unlawful employment practices;

47. Order River's Edge to make Charging Party whole by providing appropriate back-pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of River's Edge's unlawful employment practices including but not limited to reinstatement and/or front pay;

48. Order River's Edge to make Charging Party whole, by providing compensation for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described above, including, emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial;

49. Order River's Edge to make whole the class of female employees, by providing compensation for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described above, including, emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial;

50. Order River's Edge to pay Charging Party punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial;

51. Order River's Edge to pay the class of female employees punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial;

52. Grant such further relief as the Court deems necessary and proper in the public interest; and

53. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Dated: September 4, 2024

Respectfully submitted,

KARLA GILBRIDE
General Counsel
U.S. Equal Employment
Opportunity Commission
131 M. Street, N.E.
Washington, DC 20507

KRISTEN M. FOSLID
Regional Attorney
Florida Bar No. 688681
Kristen.foslid@eeoc.gov

BEATRIZ BISCARDI ANDRE
Assistant Regional Attorney
New York Bar No. 4394599
Beatriz.andre@eeoc.gov

U.S. Equal Employment
Opportunity Commission
Miami District Office
100 S.E. 2nd Street, Suite 1500
Miami, FL 33131

*/s/ Melissa M. Castillo*
Melissa M. Castillo

Trial Attorney
Florida Bar No. 1025338
U.S. Equal Employment
Opportunity Commission
Tampa Field Office
501 E Polk Street, Suite 1000
Tampa, FL 33602
Melissa.castillo@eeoc.gov