UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

    Plaintiff,                                 Case No.: 8:24-cv-02090-WFJ-AAS

v.

RIVER'S EDGE ENTERPRISES, LLC,
dba RIVER'S EDGE BAR AND GRILL,

    Defendant.

_____/

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S RENEWED MOTION TO COMPEL AND FOR SANCTIONS

Defendant, River's Edge Enterprises, LLC d/b/a River's Edge Bar and Grill ("River's Edge"), by and through undersigned counsel, hereby files its Response in Opposition to Plaintiff EEOC's Renewed Motion to Compel and for Sanctions and in support states:

**I.    Introduction**

The EEOC's Renewed Motion to Compel and for Sanctions (Doc. 62) is not based on a failure to comply with the Court's August 20, 2025 Order (Doc. 41). Rather, it reflects the EEOC's dissatisfaction with the results of Court-ordered discovery and its attempt to expand the scope of the Court's Order beyond what was required. To comply with the Court's August 20 Order, River's Edge took the following actions:

1. Retained Dwayne Denny, an independent forensic vendor, of Data Specialist Group ("DSG"), to conduct a forensic examination at substantial cost;

2. Conducted vendor-assisted forensic examinations of the mobile devices of Ronald Cremeans, Robert Cremeans, and Won Tae Kim;

3. Conducted supervised, in-person searches of the mobile devices of Randall Cremeans and Dawn Drake using the same keyword set;

4. Produced an 83-page Amended Response to the EEOC's Request for Production explaining the methodology and results; and

5. Supplemented its production with all responsive documents that exist, including previously produced text messages and additional identified media. (See Amended Response, Doc. 62, Exh. 1, at pp. 2–19; Denny Report, C–E).

A significant part of the EEOC's renewed motion is its argument that Dwayne Denny of DSG should have used the array of search terms set forth in its Exhibit B to its First Request for Production. (Doc. 37-1, p. 25). Exhibit B was originally referenced in the EEOC's Request No. 41. (Doc. 37, p. 15). In the earlier EEOC motion to compel (Doc. 37, p. 8), the EEOC requested that the Court compel a response to Request No. 41. (the Exhibit B search terms). However, the Court did not grant the EEOC's motion with regard to this request. River's Edge stands on its earlier objection that these terms are vastly overbroad (i.e. "legs"), vague (i.e. "shorts") and disproportionate to the nature and needs of this case. (Doc. 39).

## II.  The Court Did Not Order Adoption of EEOC's Proposed Search Terms

The EEOC's motion rests heavily on the claim that River's Edge violated the Court's Order by failing to use the EEOC's Exhibit B search terms, including many generic terms such as "sex," "fat," "ass," "touch," "shed," and "porn."

The August 20 Order does not require that. The Order compelled River's Edge to conduct reasonable searches for responsive ESI. It did not adopt the EEOC's Exhibit B search-term list or require use of untethered or generic terms divorced from known custodial usage. River's Edge instead applied a comprehensive keyword list tailored to the actual Requests (excluding Request No. 41), the allegations of the Complaint, the custodians, and known communications, and applied that list across full device datasets using professional forensic tools. (Amended Response, Doc. 62, at pp. 3–5).

Dwayne Denny of DSG has indicated after his review of the EEOC's renewed motion that to completely search the managers' email accounts he would need the bar managers' account information and passwords and must set up a new program to review emails accounts.

## III.  Defendant Fully Complied with the Court Ordered ESI Searches

### A.  Vendor-Assisted Forensic Examinations

River's Edge retained DSG on September 11, 2025, and forensic examiner Dwayne Denny conducted full logical forensic extractions using MOBILedit Forensic PRO on:

3

      1.     Ronald Cremeans – Samsung SM-A037U

      2.     Robert Cremeans – Samsung SM-A156U

      3.     Won Tae Kim – Samsung SM-S908U1

(Denny Report, Exhs. C–E; Amended Responses, Doc. 62, Exh. 1, at pp. 6–15). Each extraction included:

      1.     Messages (SMS/MMS);

      2.     Application data to the extent resident on the device;

      3.     Deleted-data recovery;

      4.     Files and documents;

      5.     Photos and videos;

      6.     Pornography/nudity detection;

      7.     Keyword searches across all extracted datasets.

Across all devices, the forensic reports reflect zero responsive keyword hits, no deleted responsive material, and no inappropriate images or videos. (Denny Report, Exhs. C–E, "Keyword Hits" sections). Perhaps the EEOC needs to take Mr. Denny's deposition to ask about the paucity of results.

    **B.**    **Supervised Searches of Randall Cremeans and Dawn Drake**

On September 23, 2025, undersigned counsel conducted supervised, in-person searches of the mobile devices of Randall Cremeans and Dawn Drake, using the same keyword list applied by DSG. (Amended Responses, Doc. 62, Exh. 1, at pp. 12–14). Those searches yielded no responsive ESI.

4

Ms. Drake advised that the device she used during the relevant period ceased functioning years ago before this litigation. Ms. Drake says she is on her third phone. Ms. Drake has no iCloud accounts or other storage systems for that store past data. There is no evidence—and Plaintiffs confirmed this in their depositions — that she ever sent anything inappropriate. (Id. at p. 13). Randall Cremeans does not use email. Any personal business he conducts is done by Dawn Drake.

**IV.  EEOC Mischaracterizes Device Usage and Non-Existent Systems**

The EEOC faults River's Edge for failing to search devices or systems that either did not exist or were not used for relevant communications:

1. Randall Cremeans and Won Tae Kim do not own laptops or desktops. In their floor-level roles, they used only their phones. (Amended Responses, Doc. 62, Exh. 1, at pp. 10–12).

2. Robert Cremeans has a desktop computer at home; the EEOC offers no basis to believe it contains relevant workplace communications.

3. Ronald Cremeans has a laptop; the EEOC similarly fails to identify any missing category of ESI beyond what was already produced from his phone. As to whether some texts or emails existed that Dwayne Denny could not locate is a question for Dwayne Denny, the forensic expert. However, Ronald Cremeans' testimony will be that he only uses this laptop to place orders for items such as cole slaw.

It is significant that the two EEOC claimants in this case, Krystal Argila and Penelope Scott, testified that they allege no one other than Ronald Cremeans ever sent them anything improper. (Exh. 1 and 2 hereto).

Regarding the issue of proportionality, Rule 34 does not require the speculative searches of non-work devices absent any showing of relevance or likelihood of responsive data. The reality of River's Edge workplace and the work that the servers and managers perform must be considered in the context of what is alleged and demanded by the EEOC in this case. River's Edge is a bar, restaurant, and outside patio on the Alafia River. There are only 12 part-time employees at the present time, excluding the three brothers.

The brothers work as managers on a rotating basis. There are no offices at Rivers Edge with computers. The managers, including the Cremeans brothers, walk the floor on their nights. They are frequently found shucking oysters. Mobile phones are the only means of electronic communication. Robert Cremeans posts the work schedule on the wall. There is not a human resource department, account receivables, or any kind of business office. If the EEOC had taken a deposition of the managers or sent an interrogatory about what devices the managers use on the floor most the forensic issues could have been substantially narrowed.

### V. The Absence of Results Does Not Equal Non-Compliance

The EEOC's motion repeatedly conflates no results with no effort. That is incorrect. Dwayne Denny would have to be asked any technical questions about his

6

search results. The forensic reports show that searches were conducted and that they returned no responsive data. Courts routinely reject motions to compel where a responding party demonstrates reasonable, good-faith search efforts that yield no responsive documents. See Fed. R. Civ. P. 26(b)(1).

Dwayne Denny's forensic report documents (1) What was searched; (2) How it was searched; (3) By whom it was searched; and (4) What the results were.

(Amended Responses, Doc. 62, Exh. 1, Denny Report, Exhs. C–E).

## VI. Additional Financial Documents for 2025 Do Not Exist

The EEOC also seeks sanctions related to financial discovery. The record is clear:

1. River's Edge produced its 2024 Profit & Loss Statement (Bates 000447). (Amended Responses, Doc. 62, Exh. 1, at pp. 18–19).

2. No 2025 tax returns exist. Undersigned counsel has written to the EEOC lawyers about this repeatedly.

3. River's Edge produced all financial documents currently in its possession. River's Edge does not have financial reporting systems and must obtain said records from an accountant. Counsel for River's Edge is actively seeking additional financial reports for 2025 and will produce any such documents obtained. At the present time, undersigned counsel has been unable to contact Robert Cremeans to determine whether his accountant may provide additional financial records for

2025. River's Edge had to ask for a continuation of Robert Cremeans' deposition due to illness which was granted. (Doc. 65).

4. River's Edge agrees to supplement if additional financial records are generated. A party cannot be sanctioned for failing to produce documents that do not exist.

## VII. Sanctions are Unwarranted

Sanctions require bad faith, willfulness, or flagrant disregard of a court order. None is present here. River's Edge:

1. Sought extensions to hire a forensic examiner and have a 4–5-hour forensic examination;

2. Retained an independent forensic vendor;

3. Conducted forensic and supervised searches;

4. Produced detailed reports and amended responses; and

5. Continues to supplement discovery. Counsel for River's Edge is seeking to find out if additional financial reports, or a tax return, has been generated for 2025.

The forensic examination by DSG that River's Edge conducted is proportionate to, and consistent with, the Court Order, the nature of its workplace and the size of its workforce. The only electronic devices that managers use when on the floor is their phones. These have been searched.

8

## VIII. Alternative Request for Relief

In the event the Court has concerns regarding the forensic methodology or keyword selection, Defendant respectfully requests—in lieu of sanctions—that the Court order:

1. A limited meet-and-confer between the EEOC and DSG's forensic examiner, Dwayne Denny, to address any technical questions regarding the searches performed; and

2. No further compelled searches absent a showing that additional responsive ESI likely exists. This is especially true regarding any personal email accounts that were never used at River's Edge. These alternatives preserve proportionality and avoid unnecessary expense or duplication.

## IX. Conclusion.

River's Edge complied with the Court's August 20, 2025 Order in good faith and in full except as noted herein. The EEOC's Renewed Motion seeks to expand that Order and penalize Defendant for the absence of evidence. The motion should be **DENIED.**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on February 5, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

                /s/ Ronald W. Fraley
                Ronald W. Fraley
                Florida Bar No.: 0747025
                The Fraley Firm, P.A.
                412 East Madison Street, Suite 813
                Tampa, FL  33602
                rfraley@fraleylawfirm.com
                Telephone: (813) 229-8300
                Attorney for Defendant

Page 1

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

    Plaintiff,

                              CASE NO.:

vs.                             8:24-cv-02090-WFJ-AAS

RIVERS EDGE ENTERPRISES, LLC,
d/b/a RIVER'S EDGE BAR AND GRILL,

    Defendant.
_____/

CONTINUED
DEPOSITION OF:    KRYSTAL ARGILA
TAKEN BY:         The Defendant
DATE TAKEN:       Wednesday, September 3, 2025
TIME:            10:03 a.m. - 1:00 p.m.
PLACE:           Madison Building
                 412 East Madison Street, Suite 804
                 Tampa, Florida 33602
REPORTED BY:      Tonya H. Magee, Registered
                 Professional Reporter and Notary
                 Public, State of Florida at Large

EXHIBIT 1

```
 1  A P P E A R A N C E S:
 2
 3  SABARISH NEELAKANTA, ESQUIRE
     OF:   U.S. Equal Employment Opportunity Commission
 4         Miami District Office
           100 Southeast 2nd Street, Suite 1600
 5         Miami, Florida 33131
           (786) 648-5897
 6         sabarish.neelakanta@eeoc.gov
 7         APPEARING ON BEHALF OF THE PLAINTIFF
 8
     RONALD W. FRALEY, ESQUIRE
 9   OF:   The Fraley Firm, P.A.
           412 East Madison Street, Suite 804
10         Tampa, Florida 33602
           (813) 229-8300
11         rfraley@fraleylawfirm.com
12         APPEARING ON BEHALF OF THE DEFENDANT
13
14
15
     ALSO PRESENT VIA VIDEOCONFERENCE:
16
     Ronald Cremeans, Defendant
17
18
19
20
21
22
23
24
25
```

Page 3

I N D E X

TESTIMONY OF KRYSTAL ARGILA:

Continued Direct Examination by Mr. Fraley..... 4

CERTIFICATE OF OATH................................ 124

CERTIFICATE OF REPORTER............................ 125

READ AND SIGN NOTIFICATION LETTER.................. 126

ERRATA SHEET....................................... 127

- - - - -

E X H I B I T S

DEFENDANT'S
EXHIBIT           DESCRIPTION                              PAGE
Exhibit 3   -  Facebook screenshot....................    4
Exhibit 4   -  River's Edge employee profile..........   10
Exhibit 5   -  Charge of Discrimination...............   20
Exhibit 6   -  Text message thread....................   61
Exhibit 7   -  Hillsborough County Sheriff's Office
               Booking Image of Krystal Argila........  109
Exhibit 8   -  Application for Employment.............  111
Exhibit 9   -  Hillsborough County Sheriff's Office
               Booking Image of Joseph Morton.........  112
Exhibit 10  -  11/22/24 charges.......................  113

- - - - -

S T I P U L A T I O N S

It is hereby agreed and so stipulated by and between the parties hereto, through their respective counsel, that the reading and signing of the transcript are expressly reserved by the Deponent.

- - - - -

Page 12

1    Q.   Did you have -- did you have -- how many --
2    okay.  So you had Robert, you had Ron.  And who else
3    actually managed you in the shift?
4    A.   Ron, Robert, Randy, Dawn, and Taye.
5    Q.   Okay.  How often did Taye do it?
6    A.   I think once a week that I worked with him.  I
7    don't know how many days he actually managed a week.
8    Q.   But you don't -- you're not alleging that
9    Robert Cremeans ever did or said anything to you that
10   you considered inappropriate, are you?
11   A.   No.
12   Q.   And Randy, you are not alleging in this case
13   that Randy Cremeans did or said anything that you
14   considered inappropriate?
15   A.   No.
16   Q.   What about Taye, do you allege that he said or
17   did anything inappropriate to you?
18   A.   No.
19   Q.   And what about Dawn?
20   A.   No.
21   Q.   Do you allege that Robert Cremeans ever sent
22   you any salacious texts or anything that you considered
23   to be inappropriate, either text, email, or anything
24   like that?
25   A.   No.

```
                                              Page 13
 1       Q.   Same question with Taye, do you allege that he
 2   ever sent you any inappropriate texts or emails?
 3       A.   No.
 4       Q.   What about Ron?
 5       A.   No.
 6       Q.   And what about Randy?
 7       A.   No.
 8       Q.   I know that you allege that -- we're going to
 9   get to that in a second, but Ron, you said he walked by
10   and showed you his phone and it had something on there
11   that was inappropriate?
12       A.   Well, he didn't walk by, but he would be in
13   close proximity to us, sitting in front of us or next to
14   us, whatever the case may be.
15       Q.   And showed you a picture of something you
16   considered inappropriate?
17       A.   Yeah.  I mean, pictures of a website.
18       Q.   Okay.  Do you allege that Robert Cremeans,
19   Randy Cremeans, Dawn, or Taye ever showed you anything
20   on their phones that were inappropriate?
21       A.   No.
22       Q.   Well, let's get to your work as a server
23   there.  Did you make good money?  I mean, did you like
24   the job?  What was it like?  How would you describe the
25   job?
```

```
                                                            Page 1

 1              UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
 2                    TAMPA DIVISION
 3    U.S. EQUAL EMPLOYMENT
      OPPORTUNITY COMMISSION,
 4
           Plaintiff,        Case No.:  8:24-sv-02090-WFJ-AAS
 5
      vs.
 6
      RIVERS EDGE ENTERPRISES, LLC,
 7    dba RIVER'S EDGE BAR AND GRILL,
 8         Defendant.
                                      /
 9
10            DEPOSITION OF PENELOPE M. SCOTT
11    DATE:       September 4, 2025
12    TIME:       9:55 a.m. to 12:56 p.m.
13    PLACE:      Madison Building
                  412 East Madison Street
14                Suite 804
                  Tampa, Florida 33602
15
      TAKEN BY:   Andrea Oxendine, FPR
16                Notary Public, State of Florida
17
18
19
20
21
22
23            EXHIBIT
24               2
25
```

EXHIBIT 2

Veritext Legal Solutions
800-726-7007                                       305-376-8800

Page 2

1  APPEARANCES FOR PLAINTIFF
2  Sabarish P. Neelakanta, Esquire
   US Equal Employment Opportunity Commission
3  100 Southeast 2nd Street
   Suite 1600
4  Miami, Florida 33131
   786-648-5897
5  sabarish.neelakanta@eeoc.gov
6
7  APPEARANCES FOR DEFENDANT
8  Ronald W. Fraley, Esquire
   The Fraley Firm, PA
9  412 East Madison Street
   Suite 813
10 Tampa, Florida 33602
   813-229-8300
11 rfraley@fraleylawfirm.com
12
13 ALSO PRESENT:
14 Ron Cremeans
15
16
17
18
19
20
21
22
23
24
25

Page 3

1              I N D E X
2  TESTIMONY OF PENELOPE M. SCOTT
3  DIRECT EXAMINATION BY MR. FRALEY.....................04
4  CERTIFICATE OF OATH..................................160
5  CERTIFICATE OF REPORTER..............................161
6  READ & SIGN LETTER...................................162
7  ERRATA SHEET.........................................163
8
9
10            E X H I B I T S
11 For Defendant:
12 Exhibit 1    Interview Script....................41
13 Exhibit 2    Photograph..........................107
14 Exhibit 3    Photograph..........................112
15 Exhibit 4    Photograph..........................115
16 Exhibit 5    Text Messages.......................116
17 Exhibit 6    Text Messages.......................138
18 Exhibit 7    Text Messages.......................141
19
20
21           S T I P U L A T I O N S
22 It is hereby stipulated and agreed by and between
   counsel present for the respective parties, and the
23 deponent, that the reading and signing of the deposition
   are hereby reserved.
24
25

Page 4

1              PROCEEDINGS
2       THE COURT REPORTER: Would you raise your
3  right hand, please.
4       Do you swear or affirm that the testimony
5  that you will give in this matter will be the truth, the
6  whole truth, and nothing but the truth.
7       THE WITNESS: Yes.
8            Penelope M. Scott,
9  having first been duly sworn, was examined and testified
10 as follows:
11           DIRECT EXAMINATION
12 BY MR. FRALEY:
13   Q. Would you please state your full name.
14   A. Penelope Mae Scott.
15   Q. So I see your name in different places. Do you
16 use your middle initial?
17   A. Not all the time.
18   Q. Did you used to use it more frequently, the M?
19   A. No. Not really. When I was younger, my family
20 called me Ellie Mae, but I don't really use my middle
21 name.
22   Q. And the Mae is M-A-E?
23   A. Yes.
24   Q. Okay. And have you ever had a deposition before
25 where you're under oath?

Page 5

1    A. I believe so.
2    Q. Okay. My name is Ron Fraley. I represent
3  River's Edge; okay? And one of the things that we're
4  going to do is I'm going to be asking you questions
5  about your allegations in this matter. If I ask you a
6  question that doesn't make sense or if you're at all
7  unclear about what I'm asking, please feel free to ask
8  me to repeat the question.
9    A. Okay.
10   Q. And another thing that we have to do is we have
11 to allow each other to finish so that she can type this
12 up into a booklet with questions and answers. And then
13 the other thing is you need to make your answers
14 audible. Nods of the head or mm-hmm, uh-uh can look
15 ambiguous on the transcript; right? You might go
16 mm-hmm, you know, so you want to make it audible so that
17 she can take it down.
18   A. Okay.
19   Q. All right. Okay. What type of a matter have you
20 had your deposition taken in before or matters?
21   A. I have been arrested a couple of times.
22   Q. Okay. When was the last time?
23   A. 2017.
24   Q. Okay. And your deposition was taken in that?
25   A. I believe it's all part of the court process.

2 (Pages 2 - 5)

Page 150

1  Q. Do you allege that Robert Cremeans ever sent you
2  any inappropriate texts or emails or any --
3  A. Robert?
4  Q. Yes.
5  A. No.
6  Q. Did he ever alledgedly show you his phone with a
7  naked somebody on it?
8  A. Robert? I'm clarifying you're talking Robert.
9  Q. Right. Let me just tell you. I just need to go
10 through kind of a list of questions. Even if I think
11 that the answer is no, he didn't.
12 A. Okay.
13 Q. I just need to go -- you know, it's like checking
14 boxes; right?
15 A. I'm just making sure we're talking about Robert.
16 Q. Right. It doesn't mean I have any reason to
17 believe that he did.
18 A. Yeah.
19 Q. I'm just -- I have to go through just to make
20 sure.
21 A. Yeah. No. Robert's never done that.
22 Q. Okay.
23 A. The only thing me and Robert have talked about
24 sexually is when I brought up Ron and how he was acting.
25 And Robert said, "Yeah. I'm surprised nobody has a case

Page 151

1  against him yet. I keep asking him to stop."
2  Q. Okay. But Robert Cremeans has never sent you any
3  inappropriate texts, emails --
4  A. Absolutely not.
5  Q. Okay. What about Randy Cremeans? Has he ever
6  allegedly sent you any salacious pornographic texts or
7  materials or websites or anything?
8  A. No.
9  Q. What about Dawn Drake?
10 A. No.
11 Q. What about Taye?
12 A. No.
13 Q. Okay. So other than Ron Cremeans, you don't
14 allege that anyone ever sent you anything that was
15 improper or inappropriate?
16 A. Sexually involved, no.
17 Q. Okay. Do you -- okay. Strike that.
18    Did you ever -- were you ever not able to go to
19 work because you were so emotionally distraught about
20 anything that Ron Cremeans ever did or said to you?
21 A. I've never been in the position where I can take
22 off a day of work for my mental health, no matter how
23 bad it is.
24 Q. Okay. So the answer is no?
25 A. No.

Page 152

1  Q. Did anyone ever pick you up to go to work?
2  A. No.
3  Q. Did any of the harassment that you've alleged
4  ever actually interfere with your ability to do your
5  job?
6  A. Yes. It still does to this day.
7  Q. How did it do that?
8  A. Because I'm -- at one of the jobs I'm at now, I'm
9  the closing bartender. And I'm there by myself a lot of
10 the times. And I have this irrational fear now that
11 some man is going to come get me, you know, and there's
12 nobody around. Because that's how I felt all the time
13 at River's Edge. And now when I'm by myself, it's just
14 a fear that I never had until all of that happened.
15 Q. But when you were working at River's Edge, did
16 anything that Ron Cremeans allegedly did or say ever
17 actually interfere with your ability to do your work?
18 A. Yes. I would be crying all the time. Back there
19 by the shed crying my eyes out. Victoria has been
20 witness to it at least ten times.
21 Q. What's Victoria's last name?
22 A. Smith. I have her phone number too if you need
23 it. She's one of the witnesses.
24 Q. And I asked you something earlier. But did you
25 ever show Ron Cremeans your breasts?

Page 153

1  A. No.
2  Q. Pull your shirt up?
3  A. Not that I know of. No.
4  Q. Did you ever do that at work to anybody? Show
5  anybody anything?
6  A. At work?
7  Q. Yeah.
8  A. No. Unless there was a time I was way too drunk
9  and I don't remember. If you have it on footage, please
10 pull it up. But not that I recall.
11 Q. And you said that -- would you wear the I have no
12 tits T-shirt to work or only when you were there
13 drinking?
14 A. We had River's Edge shirts we had to wear on the
15 clock.
16 Q. Okay. But you did wear the I have no tits
17 T-shirt there at other times?
18    MR. NEELAKANTA: Objection to form.
19    THE WITNESS: Probably once. Yeah.
20 BY MR. FRALEY:
21 Q. Okay.
22 A. It's not my favorite T-shirt.
23 Q. Have you ever filed for disability?
24 A. No.
25 Q. Did you ever dance at work?

39 (Pages 150 - 153)